[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wade v. Shoop*, Slip Opinion No. 2026-Ohio-2198.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2198

THE STATE EX REL. WADE, APPELLANT, *v.* SHOOP, WARDEN, APPELLEE.[1]

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wade v. Shoop*, Slip Opinion No. 2026-Ohio-2198.]**

*Habeas corpus—Inmate's case was transferred from juvenile court to adult court in manner that satisfied all statutory procedural requirements for bindover, and adult court therefore did not patently and unambiguously lack subject-matter jurisdiction to convict him—State v. Turner followed—Court of appeals' judgment granting warden's motion to dismiss affirmed.*

(No. 2024-1110—Submitted March 11, 2025—Decided June 16, 2026.)

APPEAL from the Court of Appeals for Ross County, No. 24CA5.

_____

---

1. Wade named William Cool, who was then the warden of the Ross Correctional Institution, as the respondent in this action. Timothy Shoop has succeeded Shoop as warden of that institution. We therefore automatically substitute Shoop for Cool as the appellee in this appeal. *See* S.Ct.Prac.R. 4.06(B).

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} When he was 16 years old, appellant, Jordyn Wade, participated in killing four people and injuring a fifth. He was convicted in an adult court on eight counts of aggravated murder, eight counts of murder, and 12 other counts and sentenced to 172½ years in prison.

{¶ 2} Eight years later, Wade filed a petition for a writ of habeas corpus in the Fourth District Court of Appeals. He named appellee, the warden of the Ross Correctional Institution, where he is confined, as the respondent. Wade asserted two grounds for habeas relief: (1) that the adult court lacked subject-matter jurisdiction over his case because he is intellectually disabled and had the mental capacity of an 11- or 12-year-old at the time of the killings and (2) that the adult court lacked subject-matter jurisdiction to convict him of the eight counts of aggravated murder and four of the murder counts because the juvenile court had not bound over those counts. The warden filed a motion to dismiss, which the court of appeals granted. Wade appeals as of right.

{¶ 3} Because we conclude that Wade has not pleaded facts showing that the adult court patently and unambiguously lacked subject-matter jurisdiction over his case, we affirm the judgment of the court of appeals.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. The shootings

{¶ 4} On June 13, 2015, Michael Ballour and Daniel Sharp were socializing at Ballour's home in Columbus with Ballour's teenaged daughter, Tyajah, and her half-sister, T.N. At about 3:30 in the morning, Wade, Robert Adams, and Angela Harrison entered the home. Adams was 27 years old and weighed between 220 and 280 pounds. Wade was 16 years old and weighed between 140 and 160 pounds.

{¶ 5} The Tenth District Court of Appeals, which heard Wade's direct appeal, described what happened next as follows:

. . . Adams and Ballour began to argue. Ballour attempted to leave the premises, but Adams dissuaded him. Adams summoned T.N. and Tyajah from the front room to the kitchen, where T.N. found Adams holding Ballour and Sharp at gunpoint. Adams ordered the four of them to the floor, and yelled for Wade to come in from the porch. Wade entered the kitchen, also holding a gun. When Adams ordered Ballour and Sharp[, "G]ive us everything that you have," Sharp gave Adams some cocaine. Ballour told Adams that he had something upstairs, and Adams sent Wade to retrieve this. Adams then announced to all of them that it would be too loud if they were shot in the kitchen, and ordered everyone to the basement.

As T.N., Tyajah, Sharp, and Ballour descended the stairs, Adams ordered them to [the] floor. T.N. observed that the woman who had arrived with Wade and Adams, [Harrison], was already in the basement hiding behind the washing machine. Wade, still holding his gun, descended into the basement and stood at the bottom of the stairs. At this point, Adams asked Wade[,] "[S]hould I off them all?" Wade answered "yes." Adams then shot Sharp in the head. T.N. was close enough to see blood running down the chair where Sharp's head lay.

(Citations omitted.) *State v. Wade*, 2018-Ohio-976, ¶ 7-8 (10th Dist.). Adams then shot Ballour, Harrison, Tyajah, and T.N.

{¶ 6} Sharp, Ballour, Harrison, and Tyajah all died, but T.N. survived and testified at trial. During her testimony, T.N. made clear that Wade was present

when Adams shot Sharp but that he went upstairs before Adams shot the others. There is no dispute that Adams—not Wade—fired all the shots.

### B. The juvenile-court proceedings

{¶ 7} The State filed a complaint—and later an amended complaint— against Wade in the juvenile division of the Franklin County Court of Common Pleas ("the juvenile court"). The amended complaint alleged 11 offenses of delinquency against Wade: four counts of murder, five counts of kidnapping, one count of attempted murder, and one count of having a weapon while under a disability.

{¶ 8} The State filed a motion asking the juvenile court to relinquish jurisdiction over the case and transfer it, under former R.C. 2152.12(A)[2] (mandatory bindover) or (B) (discretionary bindover), to the general division of the Franklin County Court of Common Pleas ("the adult court"). In December 2015, the juvenile court held a probable-cause hearing on the bindover motion. The court found that there was probable cause to believe that Wade committed the four counts of murder, the five counts of kidnapping, and the count of attempted murder. The court dismissed the weapon-under-disability count without commenting on probable cause. It then relinquished jurisdiction over the case and transferred the case to the adult court. Because Wade was alleged to have committed murder and attempted murder, the court concluded that bindover was mandatory. *See* former R.C. 2152.12(A).

### C. The adult-court proceedings

{¶ 9} A grand jury then indicted Wade on 29 counts: one count of aggravated burglary, five counts of aggravated robbery, five counts of kidnapping,

---

2. R.C. 2152.12(A) was amended by 2023 Am.Sub.S.B. No. 288 (effective Apr. 4, 2023). The version in effect at the time of Wade's bindover was enacted by 2012 Am.Sub.S.B. No. 337 (effective Sept. 28, 2012). Unless otherwise stated, further citations to R.C. 2152.12 in this opinion refer to the version in effect at the time of Wade's bindover.

eight counts of aggravated murder, eight counts of murder, one count of attempted murder, and one count of having a weapon while under a disability. The aggravated-murder counts, four of the eight murder counts, the aggravated-burglary count, and the five aggravated-robbery counts were not charged in juvenile court.

{¶ 10} Wade pleaded not guilty to all counts. The case proceeded to trial, and a jury found Wade guilty of 27 counts, including all eight aggravated-murder charges, and acquitted him of one count of aggravated robbery. One count—for having a weapon while under a disability—was tried to the bench, and the trial judge found Wade guilty of that count.

{¶ 11} The trial judge sentenced Wade to an aggregate prison term of 172½ years to life. The Tenth District affirmed the convictions on appeal. *Wade*, 2018-Ohio-976, at ¶ 63 (10th Dist.) But the Tenth District vacated Wade's sentence because the trial judge had failed to explicitly consider his youth and attendant circumstances as mitigating factors at sentencing. *Id.* at ¶ 60, 63. On remand, Wade received the same sentence.[3]

## D. The habeas corpus action

{¶ 12} In February 2024, Wade filed his petition for a writ of habeas corpus in the Fourth District. He requested release from prison or vacation of his sentence and resentencing.

{¶ 13} Wade asserted two grounds for habeas relief. First, he argued that he was intellectually disabled at the time of the killings—with the mental capacity of an 11-or 12-year-old—and that the adult court therefore lacked subject-matter jurisdiction to try and convict him. Second, he argued that because he was never charged in juvenile court with many of his adult-court counts—including the

---

3. R.C. 2967.132, enacted in 2021, provides that certain juvenile offenders are eligible for parole consideration after serving 18, 25, or 30 years in prison. The statute applies to sentences imposed prior to its enactment. R.C. 2967.132(I)(1). In his brief, the warden states that Wade will be eligible for parole consideration after serving 25 years. *See* R.C. 2967.132(C)(2).

aggravated-murder counts—and the juvenile court never found probable cause to believe that he committed the offenses charged in those counts, the adult court lacked subject-matter jurisdiction to convict him of those offenses.

{¶ 14} In support of his mental-age argument, Wade included with his petition several documents from three purported experts. First, he attached an affidavit and report from Robin Belcher-Timme, who holds a doctorate in clinical psychology and is board certified in forensic psychology. In 2023, Dr. Belcher-Timme reviewed documents related to Wade and his case and personally interviewed Wade as well as individuals with firsthand knowledge of his functioning. She concluded that Wade had an intellectual disability at the time of the killings and that he continues to be intellectually disabled. She also found that although Wade had been identified by his school prior to the killings as a student with substantial learning difficulties, he was never diagnosed with an intellectual disability and was never provided with services for children with developmental disabilities. Her report cites an IQ test that Wade's school gave him when he was 13 on which he scored 75, which is in the lowest fifth percentile of his same-aged peers.

{¶ 15} Second, Wade attached an affidavit and report from Jeffrey Madden, who holds a doctorate in psychology and is board certified in clinical neuropsychology and rehabilitation psychology. In 2023, Dr. Madden reviewed records related to Wade and his case and personally met with and tested him. Dr. Madden concluded that Wade is at a level of cognitive functioning consistent with "that of individuals who have been diagnosed with mild intellectual disability."

{¶ 16} Third, Wade attached an unsworn declaration from Stephen Greenspan, who holds a doctorate in developmental psychology and is a licensed psychologist. Dr. Greenspan professes to be the most cited authority in the section on intellectual-developmental disability in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). He states that Wade's counsel

6

did not ask him to make a formal diagnosis but, rather, to consider "forms of potential culpability and/or sentencing mitigation that do not appear to have been developed by Mr. Wade's previous attorneys or at either sentencing hearing." Dr. Greenspan did not interview Wade, but he reviewed documents related to him and reviewed the reports of Dr. Belcher-Timme and Dr. Madden.

{¶ 17} According to Dr. Greenspan, "[w]hile MA [mental age] is no longer the basis for statistical calculation of intelligence . . . it is still possible to determine someone's mental age and it can still be useful in a forensic context." He concluded that "the mental age of Jordyn Wade at the time of the murders in 2016 was a maximum of 12 and probably 11 or even less." He also concluded that given Wade's intellectual disability, it is unlikely that Wade could have influenced the behavior of the older and heavier Adams. Dr. Greenspan's "basic conclusion is that it is very unlikely that the tragic outcome (killing of four victims, attempted murder of a fifth) could have been materially affected by the active influence of Jordyn Wade over the behavior of Robert Adams." When Adams asked Wade whether Adams should kill the victims, Dr. Greenspan explained, "It would have required considerably more social competence (not to mention assertiveness) than what one would find in an intellectually disabled follower like Jordyn Wade to have said to the armed and very violent Robert Adams[,] '[N]o[,] I don't think that is a good idea.'"

{¶ 18} The warden filed a Civ.R. 12(B)(6) motion to dismiss, which the Fourth District granted. Wade appeals as of right.

## II. LEGAL ANALYSIS

### A. Habeas requirements and standard of review

{¶ 19} We review de novo the court of appeals' decision dismissing Wade's habeas corpus petition. *State ex rel. Guthrie v. Fender*, 2022-Ohio-767, ¶ 8. We must accept as true all factual allegations in Wade's petition. *Id.* We may affirm

the court of appeals' dismissal of Wade's petition only if it appears beyond doubt that he can prove no set of facts entitling him to relief. *Id.*

{¶ 20} A writ of habeas corpus is available only when the sentencing court lacked subject-matter jurisdiction over the case or when the petitioner's maximum sentence has expired and he is being held unlawfully. *Humphrey v. Bracy*, 2021-Ohio-3836, ¶ 8. A writ of habeas corpus is generally not available when the petitioner had an adequate remedy in the ordinary course of the law. *Agee v. Russell*, 2001-Ohio-1279, ¶ 20. Rather, "'[i]n the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging that jurisdiction has an adequate remedy at law by appeal.'" *Id.*, quoting *Brooks v. Gaul*, 2000-Ohio-133, ¶ 5.

{¶ 21} Wade does not argue that his maximum sentence has expired; he instead argues, on two grounds, that the adult court lacked subject-matter jurisdiction over his case.

### B. The mental-age argument

{¶ 22} Wade first argues that the adult court lacked subject-matter jurisdiction over his case because he had the mental capacity of an 11- or 12-year-old at the time of the shootings. A juvenile court possesses exclusive jurisdiction over a child alleged to be delinquent for committing acts that would constitute a crime if committed by an adult" unless the juvenile court has bound the case over to adult court. *In re M.P.*, 2010-Ohio-599, ¶ 11. Depending on the charge and the juvenile, for the case to be bound over, the juvenile must have been at least 14 or 16 years old at the time of the charged offenses. *See* R.C. 2152.12. Wade thus argues that because he had the mental capacity of only an 11- or 12-year-old, he did not meet this minimum-age requirement.

{¶ 23} We reject Wade's argument. Wade could have asserted his mental-age argument at his trial or on direct appeal of his convictions. *See Humphrey*,

2021-Ohio-3836, at ¶ 14 (transfer of a juvenile case to adult court may be challenged on appeal from final judgment); *Smith v. May*, 2020-Ohio-61, ¶ 29, 35 (same). Given the availability of this adequate remedy in the ordinary course of the law, Wade is entitled to habeas corpus relief only if the adult court *patently and unambiguously* lacked subject-matter jurisdiction to convict him. *See State ex rel. Mowen v. Mowen*, 2008-Ohio-4759, ¶ 12. And Wade cannot make this showing. A deviation from the required bindover procedure gives rise to a potentially valid habeas claim "only if the applicable statute clearly makes the procedure a prerequisite to the transfer of jurisdiction to the adult court." *May* at ¶ 29. Wade was 16 at the time of the shootings and thus met the statutory minimum-age requirement for mandatory bindover to adult court. *See* R.C. 2152.12(A)(1)(a)(i). Nor does the mandatory-bindover statute contain a requirement that the juvenile court determine before binding over a case whether the juvenile has an effective mental capacity of less than the statutorily required age. *See* R.C. 2152.12(A) and (F). Wade cannot show that the juvenile court deviated from a required bindover procedure that a statute clearly makes a prerequisite to the transfer of his case to the adult court.

{¶ 24} As additional support for his mental-age argument, Wade contends that the United States Constitution, the Ohio Constitution, and international norms prohibited the adult court from exercising subject-matter jurisdiction over his case and from convicting him. In support of this argument, Wade cites several decisions of the United States Supreme Court and this court for the general proposition that juveniles and mentally challenged individuals have diminished culpability for their acts and are entitled to special constitutional consideration. *See, e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (execution of persons who were adults with an intellectual disability at the time of their crimes violates Eighth Amendment to United States Constitution); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on

offenders who were under the age of 18 when their crimes were committed."); *Miller v. Alabama*, 567 U.S. 460, 465 (2012) ("mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments' "); *State v. D.W.*, 2012-Ohio-4544, ¶ 8 (quoting portions of *Roper* and *Miller*). Wade also argues that the United Nations Convention on the Rights of the Child sets the minimum age of criminal responsibility at 12 years old, although Wade notes that the United States has not ratified that treaty.

{¶ 25} But claimed constitutional violations are generally not cognizable in habeas corpus, because adequate remedies in the ordinary course of the law exist to raise such claims. For example, we have held that an adult's claim of lack of mental competence to stand trial was not cognizable in habeas corpus because the adult had an adequate remedy in the ordinary course of the law. *Howard v. Randle*, 2002-Ohio-2122, ¶ 3, 6, citing *Krauter v. Maxwell*, 3 Ohio St.2d 142 (1965). Nor, generally, are other claimed constitutional violations. *See, e.g.*, *Kneuss v. Sloan*, 2016-Ohio-3310, ¶ 7 (Sixth Amendment ineffective-assistance-of-counsel claims); *Elersic v. Wilson*, 2004-Ohio-1501, ¶ 3 (speedy-trial and double-jeopardy claims); *Howard* at ¶ 6 (claims of violations of the prohibition against ex post facto laws). Similarly here, Wade could have raised his constitutional arguments on direct appeal from his convictions. Moreover, regarding the United Nations Convention on the Rights of the Child, Wade does not explain how international treaties that the United States has not ratified could affect the subject-matter jurisdiction of Ohio's courts.

{¶ 26} For the writ of habeas corpus to be available to him, Wade must show that the adult court patently and unambiguously lacked subject-matter jurisdiction to convict him. Wade's case was transferred from the juvenile court in a manner that satisfied all the statutory procedural requirements for bindover. Under these circumstances, the adult court did not patently and unambiguously lack

subject-matter jurisdiction to convict Wade. And as noted above, Wade had an adequate remedy in the ordinary course of the law to raise during his criminal trial and direct appeal the arguments he now asserts, but he did not.

### C. The bindover argument

{¶ 27} Turning to Wade's other basis for challenging the adult court's jurisdiction, in *State v. Smith*, 2022-Ohio-274, ¶ 42, we held that "adult courts lack subject-matter jurisdiction to convict (1) a juvenile offender for any acts charged for which no probable cause has been found by a juvenile court." *See also Humphrey*, 2021-Ohio-3836, at ¶ 10 ("the conviction of a person in adult court for offenses that he committed when he was a juvenile is void for lack of subject-matter jurisdiction if there was no bindover from juvenile court in the first instance"). Wade argues that the adult court lacked jurisdiction to convict him of aggravated murder, four of the murder charges, and having a weapon while under disability because the juvenile court never bound over these 13 charges or found probable cause to believe that he committed the offenses. On appeal, he does not make this argument regarding his other convictions.

{¶ 28} Recently, however, in *State v. Turner*, 2026-Ohio-1996, ¶ 3, 38, we overruled our holding in *Smith*, 2022-Ohio-274. In *Turner*, we held as follows:

> [W]hen a juvenile court transfers a case to the adult court—whether under mandatory- or discretionary-bindover procedures—it transfers the entire case, including all the acts charged in the juvenile complaint. The juvenile court's jurisdiction over the case abates, and the adult court has jurisdiction as though the case had been initiated there. The adult court's jurisdiction extends not only to offenses charged in the juvenile complaint but also to any offense for which the grand jury issues an indictment.

*Id.* at ¶ 27.

**{¶ 29}** We noted, quoting R.C. 2151.23(H), that "upon transfer of a case from the juvenile court, the adult court has jurisdiction to enter a conviction 'for the commission of another offense that is different from the offense charged'" and that "once a case is transferred from the juvenile court to the adult court, the adult court has jurisdiction to 'hear and determine the case in the same manner as if the case originally had been commenced in that court.'" *Id.* at ¶ 23. R.C. 2151.23(H) contained this language at the time of the transfer of Wade's case to the adult court. *See* 2014 Am.Sub.S.B. No. 43 (effective Sept. 17, 2014).

**{¶ 30}** As explained above, given his adequate remedy in the ordinary course of the law, Wade must show that the adult court *patently and unambiguously* lacked subject-matter jurisdiction to convict him. *See Mowen*, 2008-Ohio-4759, at ¶ 12. Applying *Turner*, R.C. 2152.12, and R.C. 2151.23 to Wade's case, we conclude that the adult court did not patently and unambiguously lack subject-matter jurisdiction to convict him of any of the charges. The juvenile court transferred Wade's case to the adult court, and the case included all the acts charged in the juvenile complaint. *See Turner* at ¶ 22. In turn, the adult court's jurisdiction extended not only to offenses charged in the juvenile complaint but to any offense for which Wade had been indicted. *See id.* at ¶ 23. The grand jury indicted Wade for all the charges of which he was eventually convicted. Thereafter, the adult court did not patently and unambiguously lack subject-matter jurisdiction to convict Wade of these charges.

**{¶ 31}** Wade also argues that the adult court's jurisdiction over the aggravated-murder charges should be analyzed differently than the adult court's jurisdiction over the other charges, for two reasons. *First*, Wade contends, based on the language of R.C. 2152.12(A)(1)(a), that the juvenile court must have specifically found probable cause to believe that he committed aggravated murder

for the adult court to have jurisdiction to convict him of aggravated murder. At the time of Wade's bindover hearing, R.C. 2152.12(A)(1)(a) provided:

> After a complaint has been filed alleging that a child is a delinquent child *for committing an act that would be aggravated murder*, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer the case if either of the following applies:
>
> (i) The child was sixteen or seventeen years of age at the time of the act charged and there is *probable cause to believe that the child committed the act charged.*
>
> (ii) The child was fourteen or fifteen years of age at the time of the act charged, section 2152.10 of the Revised Code provides that the child is eligible for mandatory transfer, and there is probable cause to believe that the child committed the act charged.

(Emphasis added.) 2012 Am.Sub.S.B. No. 337.

{¶ 32} Because former R.C. 2152.12(A)(1)(a)(i) required a juvenile court to find probable cause to believe "that the child committed the act charged" before binding over an aggravated-murder case, Wade argues, an adult court could not have jurisdiction over an aggravated-murder case unless the juvenile court made this probable-cause finding.

{¶ 33} Wade's argument lacks merit. We held in *Turner* that an adult court could have jurisdiction to convict a juvenile of attempted murder even if the juvenile court had not found probable cause to believe that the juvenile had committed attempted murder. 2026-Ohio-1996 at ¶ 28. Attempted murder is listed along with aggravated murder as one of the charges subject to former R.C. 2152.12(A)(1)(a), and the language of the statute provides no reason to believe that

aggravated murder should be treated differently than attempted murder. As explained in *Turner*, the adult court has subject-matter jurisdiction over the entire *case*, not just the *acts* that the juvenile court found probable cause to believe the child committed. *Id.* at ¶ 22. This jurisdiction extends to new charges, such as aggravated murder, that are equivalent to the charges specified in R.C. 2152.12(A)(1)(a).

{¶ 34} *Second*, Wade argues that the adult court lacked subject-matter jurisdiction over the aggravated-murder charges because the potential sentences for those charges were more severe than the potential sentences for the charged offenses the juvenile court found probable cause to believe Wade had committed. Wade argues that an adult court lacks subject-matter jurisdiction to "go up the chain" (emphasis deleted) from the charged offenses the juvenile court found probable cause to believe the juvenile committed. But nothing in the language of R.C. 2152.12 or 2151.23 limits the jurisdiction of the adult court to charges of an equal or lower level of offense than those that the juvenile court found probable cause to believe the juvenile committed. Rather, "upon transfer of a case from the juvenile court, the adult court has jurisdiction to enter a conviction 'for the commission of another offense that is different from the offense charged,'" *Turner* at ¶ 23, quoting R.C. 2151.23(H).

{¶ 35} Accordingly, we conclude that Wade has not shown that the adult court patently and unambiguously lacked subject-matter jurisdiction to convict him of aggravated murder and murder.

### III. CONCLUSION

{¶ 36} Wade has not pleaded facts showing that the adult court patently and unambiguously lacked subject-matter jurisdiction to try and convict him. Therefore, he has not stated a claim that would entitle him to a writ of habeas corpus. Because we conclude that the Fourth District Court of Appeals correctly granted the warden's motion to dismiss, we affirm its judgment.

Judgment affirmed.

_____

Law Office of Timothy F. Sweeney and Timothy F. Sweeney, for appellant.

D. Andrew Wilson, Attorney General, and Stephanie L. Watson, Assistant Attorney General, for appellee.

_____